**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW HAMPSHIRE**

U.S. DISTRICT COURT
DISTRICT OF NH
FILED

2018 MAR -1 P 4: 12

MICHAEL STRAW, individually and as heir ✓
to JOY STRAW, deceased; MIRIAM LOVIN,
individually and as heir to JOY STRAW, deceased;
JOANNE SMITH, individually and as heir to JOY
STRAW, deceased; MARYLYN E. FLORES,
Individually and as heir to JOY STRAW, deceased;
and DAVID S. FLORES, individually and as Special
Administrator of the Estate of JOY STRAW,
   Deceased

　　　　　　Plaintiffs,


　　　　　　v.


Nicholas A. Toumpas, Commissioner, New
Hampshire Department of Health and Human
Services; Office of Public Guardian, a private
non-profit corporation; Stephanie Krenn,
individually; Mary Michaud, Individually; Ginger
Simmons, Individually; Susan Deyoe, Individually,
Lynn K. Devlin, P.A. Individually; Strafford
County Commissioner Robert J. Watson;
Riverside Rest Home; Riverside Rest Home
Director, Raymond Bower, Individually; Riverside
Rest Home Physician Edwin Charlie, Individually;
Riverside Rest Home Physician Patrick Clary,
Individually; Admitting Physician Greg Andrecky,
Individually; Beacon Hospice; and Amedisys Inc.

　　　　　　Defendants.

CASE NO. 1: 18-cv-195-PB

COMPLAINT FOR DAMAGES:

1) NEGLIGENCE - WRONGFUL
   DEATH (NH RSA § 556:12)

2) DEPRIVATION OF JOY
   STRAW'S RIGHT TO DUE
   PROCESS AND EQUAL
   PROTECTION (42 U.S.C. § 1983)
   4TH AND 14th AMENDMENT
   VIOLATIONS

3) DISCRIMINATION IN
   VIOLATION OF AMERICAN
   WITH DISABILITIES ACT AND
   THE REHABILITATION ACT;
   29 U.S.C. § 794(a) AND 28 C.F.R.
   § 41.51(a)-(d); 28 C.F.R. § 41.51(b)
   (3), 45 C.F.R. § 84.4(B) (4)

4) VIOLATION OF JOY
   STRAW'S CIVIL RIGHTS
   UNDER THE NH
   CONSTITUTION

5) ASSAULT AND BATTERY

6) FALSE IMPRISONMENT

7) INTENTIONAL INFLICTION
   OF EMOTIONAL DISTRESS

8) FRAUD

9) VIOLATION OF JOY
   STRAW'S HIPAA RIGHTS

10) JURY DEMAND

1

)  **UNDER 45 CFR 160, 162, AND 164**
)  **AND NH RSA 332-1:1-6**
)
)  **10) NEGLIGENCE-SURVIVOR**
)  **CAUSE OF ACTION**
   *11) JURY DEMAND*

**ALL PLAINTIFFS DEMAND A TRIAL BY JURY**

## I.    INTRODUCTION

1. Plaintiffs Joy Straw, deceased, and her children, Michael Straw, Miriam Lovin, Joanne Smith and Marylyn E. Flores, each individually and as heirs to Joy Straw, deceased along with David Flores as Administrator of the Estate of Joy Straw, bring this action under diversity of citizenship and 42 U.S.C. § 1983 against the Defendants for their failures to perform mandatory duties and/or for the unconstitutional and intentional/or negligent acts and/or omissions of their officers, officials, Commissioners, medical doctors, personnel, staff, agents and/or employees that resulted in the death of Joy Straw, who was a patient in the Riverside Rest Home in approximately January of 2015 until her death on March 2, 2015.

2. The series of events that led to the torturous death of Joy Straw began when Joy Straw was placed in the Riverside Rest home by the Office of Public Guardian after Joy was deemed incapacitated as she had mental health issues that interfered with her ability to take care of herself and ankle injuries that left her at a physical risk of falling and was in need of twenty four hour care. Joy did not want to be placed under Guardianship and refused to allow her children to take guardianship of her, as she wanted to maintain her independence. Joy's children consulted with Joy's doctors and social workers and were persuaded to let the Office of Public Guardian to take guardianship of their mother so that she could get the rehabilitative and medical care she needed to live a more healthy life and in a safe environment.

2

Joy's children reluctantly assented, hoping and believing their mother would get the medical care she needed, they were convinced by the Office of Public Guardian and her doctors that she would receive proper medical care and treatment. A hearing was held and the Court found that Joy needed to be placed under guardianship and a guardian named Stephanie Krenn was appointed to ensure that Joy received proper nutrition, hydration and medical care so that she could be safe and healthy.

To no avail the complete antithesis of proper nutrition, hydration and medical care and treatment was what Joy received. In fact Joy was immediately placed in a room in a locked behavioral ward in the Riverside Rest Home, as if she was a criminal. After being admitted to Riverside Rest Home, Joy was not provided adequate nutrition and hydration and received no medical care or physical therapy as was ordered by the Court. Joy Straw lost her life and died on March 2, 2015 as a proximate cause of all the Defendants' failure to uphold their duties to provide adequate care, treatment and rehabilitation to Joy Straw while ensuring her civil rights, liberties and freedoms were not violated.

## II.    **JURISDICTION**

3.  All Defendants were served with a Notice of Claims on or around August of 2015, wherein none of the Defendants responded.

4.  This Court has jurisdiction over all causes of action asserted against municipalities and States brought under 42 U.S.C. § 1983.

5.  This Court has jurisdiction of all claims involving Federally protected Constitutional Rights under the 4[h] and 14th Amendments, Due Process and Equal Protection Clauses.

6.  This Court has jurisdiction of all cases involving Federal questions and Diversity of citizenship.

7.  This Court has jurisdiction over all other claims pursuant to 28 U.S.C. § 1367 as all the claims arise from a common nucleus of operative facts that are so intertwined that they cannot be reasonably separated.

### III.    PARTIES

#### A.  Plaintiffs and Decedent

8.  Joy Straw, deceased, was at all times relevant to these claims a resident of Dover, NH a Dover, NH.  Joy was the mother of Michael Straw of Florida, Miriam Lovin of Ohio, Joanne Smith of North Carolina and Marylyn E. Flores of Maine and the mother in law of David Flores of Maine, who is was the Administrator of Joy Straw's Estate.

#### B.  Defendants

9.  Nicholas Toumpas, is an individual, who at all times relevant, served as the Commissioner of the New Hampshire Department of Health and Human Services who heads all Departments responsible for devising and implementing policies and procedures relating to the operations of county nursing homes and ensuring elderly and adult services and health facilities administration and the Department of Ombudsman are properly and adequately overseeing health care facilities and nursing homes to ensure quality medical care and safety standards are being met.

10. Office of Public Guardian is a private non-profit Corporation in Concord, NH that provides guardianship and advocacy to citizens of New Hampshire who are legally incapacitates or may have mental illness, dementia.

11.  Stephanie Krenn, Mary Michaud, Ginger Simmons and Susan Deyoe are individuals who at all times relevant, were employed as Guardians by the Office of Public Guardian.

12. Robert J. Watson is an individual and is the Strafford County Commissioner who at all

4

times relevant set policies and procedures for the services provided to the elderly in the Riverside Rest Home to include their Socio-Behavior Unit.

13. The Riverside Rest Home is a County nursing home located in Strafford County, Dover, NH, which is a 215 bed Medicare and Medicaid certified Nursing Facility owned by Strafford County, which is supposed to provide care that is unavailable or impractical in a less restrictive environment and was at all times relevant the facility that refused to provide medical care to Joy Straw when she had pneumonia, a urinary tract infection, was severely dehydrated, had pancreatitis and Sepsis.

14. Raymond Bower is an individual, who at all times relevant was the Director of Riverside Rest Home and was responsible for ensuring the policies and procedures of the Riverside Rest home were implemented and carried out.

15. Lynn K. Devlin, P.A. is an individual, who at all times relevant was the Physician Assistant who was responsible for providing medical care to Riverside Rest Home residents, more specifically who was responsible for providing medical care to Plaintiff, Joy Straw, but refused to provide medical care to Joy Straw or Emergency Assistance to save her life.

16. Physicians Edwin Charlie, Patrick Clary and Greg Andrecyk are individuals, who at all times relevant were the Physicians responsible for providing medical care to Plaintiff, Joy Straw, but refused to provide medical care to Joy Straw or Emergency Assistance to save her life.

17. Beacon Hospice, is an Amedisys Company out of Portsmouth, NH that is Medicare, Medicaid and ACHC certified that provides end-of-life care services through New England and in 2014 paid the Federal government $150 million for improperly billing Medicare for home-pound patients and placing them on Hospice and administering opioids when they were not qualified to be on Hospice and not terminally ill. Amedisys has recently had a Complaint filed

5

against it with the Office of Inspector General for the U.S. Department of Health and Human Services for hospice fraud.  Beacon Hospice as an Amedisys Company was administering morphine to Joy Straw causing her respiratory failure and hastening her death.

### C. Agency and Concert of Action

18. At all times herein mentioned, Defendants, and each of them, hereinabove, were the agents, servants, employees partners, aiders and abettors, co-conspirators, and/or joint ventuerers of each of the other Defendants named herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, enterprise, conspiracy, and/or joint venture, and each Defendant has ratified and approved the acts of each of the remaining Defendants.

19. Each of the Defendants aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiffs, as alleged herein. In taking action to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, as alleged herein, each of the Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

## IV. STATEMENT OF FACTS RELEVANT TO ALL PLAINTIFFS' CLAIMS

20. On November 20, 2014 Joy Straw was deemed incapacitated and was ordered a ward of the state of NH.

21. The Office of Public Guardian, its staff and Stephanie Krenn were ordered to provide continuing care, supervision and rehabilitation over Joy Straw to ensure she was provided adequate nutrition, hydration, and medical care to meet her daily needs and to act with respect to

Joy Straw in a manner that safeguarded, to the greatest extent possible, Joy Straw's civil rights and liberties and to restrict her personal freedom only to the extent necessary.

22. On January 8, 2015, the Office of Public Guardian, its staff and Stephanie Krenn placed Joy Straw in the Riverside Rest Home in Dover, NH in a locked up area of the facility called the behavioral unit, where Joy would not be able to walk out of as if she were a criminal in prison.

23. When Joy was first admitted to the Riverside Rest home, Joy's daughter Marylyn was told by a staff member that she needed to give Joy time to adjust to the home and that she shouldn't visit for at least a week.

24. Shocked, but hoping to help her mother adjust, Marylyn stayed away for three days, but no longer could stay away and went to visit her mother at the nursing home only to find her mother was put on Hospice.

25. Rather than help Joy by giving her physical therapy, the Defendant's, Stephanie Krenn, the Riverside Rest Home and it's Director, Raymond Bower, PA Lynn Devlin, and its doctors Edwin Charlie, Patrick Clary, Greg Andrecyk, Beacon Hospice and Amedisys Inc., in concert immediately decided after two days to declare that Joy Straw had a failure to thrive and immediately put her on hospice.

26. Joy Straw had no terminal illness.

27. Joy Straw was not examined and diagnosed by two doctors to have a terminal illness.

28. Joy Straw was not going to die within six months from any physical illness.

29. Joy Straw did not have any terminal illness that would qualify her to be a hospice patient.

30. Joy Straw was not given any counseling for failure to thrive.

31. Joy Straw never told any of the Defendants she wanted to die.

32. The Defendants decided it was time for Joy to die.

7

33. A few days after being admitted to the Riverside Rest Home, Marylyn Flores was sitting with her mother in her room when a young woman with black hair walked into the room and introduced herself and said she was from Beacon Hospice.

34. Marylyn was shocked and Joy started screaming "Am I dying I don't want to die do I have something your not telling me?"

35. Marylyn told the young woman she must be in the wrong room and the woman told her she wasn't that she was there to see Joy.

36. Marylyn asked the woman to go out of the room with her and Marylyn told the woman there must be a mistake that nothing was wrong with Joy she wasn't dying.

37. The woman told her Joy had been diagnosed with failure to thrive and was dying and that the Guardian and Beacon Hospice sent her to talk to Joy.

38. Marylyn told the woman to get out and not come back that her mother was not dying and she went back into comfort Joy who was now crying and terrified.

39. Joy Straw was not dying when she was placed in Riverside Rest home.

40. Joy was elderly, but she lived an independent life before being placed in Riverside.

41. Joy needed physical therapy for an injured ankles and she had a blood clot in her leg and was on blood thinners for treatment.

42. Immediately upon placement into Riverside she was taken off the blood thinners in contradiction to her treatment plan for the blood clot.

43. Joy was supposed to start receiving physical therapy for her walking difficulty when she was admitted to Riverside Rest Home.

44. Joy did not receive physical therapy for her walking difficulty when she was a resident or patient in the Riverside Rest home.

8

45. Joy was left in a bed and was given no assistance to use the restroom and was forced into urinating in a diaper.

46. Joy was hooked up to an alarm and if her legs went over the side of the bed the alarm would go off and attendants would enter the room and tell her she wasn't allowed out of the bed.

47. Joy would cry and ask to be taken out of the bed, but either there was nobody available to help her out of bed or she wasn't allowed out of the bed.

48. Joy began to suffer from a more severe muscle atrophy from laying in the bed and not being allowed out of the bed.

49. Once every few days an attendant would use a joist to get Joy out of the bed and the Attendant would strap her into a chair and leave her in a hallway for hours.

50. While sitting in the chair in the hallway Joy's legs would become very red and her blood pooled and caused her severe pain.

51. Joy had been diagnosed with a blood clot previous to her admission at Riverside Rest Home.

52. Joy was on blood clot medication to thin her blood when arriving at the nursing home.

53. After being admitted to the Riverside Rest Home, Joy was taken off blood thinners.

54. Joy's daughter Marylyn Flores and her son in law David Flores would visit Joy every day at the nursing home.

55. Joy's daughter Marylyn would complain to the nurses about the lack of care their mother was receiving and would request that the nurses get a doctor for their mother.

56. Each time a nurse would say no doctor was there until next week and that they would tell

Marylyn that they would write it in Joy's chart that Marylyn and Joy were requesting that Joy be seen by a doctor.

57. Joy would continually beg the nurses and staff for a doctor and no doctor would come.

58. Joy would complain about pain and feeling like she couldn't breathe and that her urinary area was burning and her abdomen was causing her unbearable pain.

59. Joy's daughter Marylyn would attempt to get help from the nurses and when Marylyn got the nurses to look at Joy the nurses would tell Marylyn that they could not discuss Joy's medical issues, because Joy was under guardianship.

60. When Joy would tell the nurses she wanted to know what was wrong with her the nurse or staff would either say I don't know or Joy herself and her daughter didn't have the right to know because she was under guardianship.

61. Joy begged for medical help, but no doctor would see Joy.

62. Joy was purportedly seen by a PA named Lynn K. Devlin for her pain, but Joy was not placed on antibiotics and not treated properly for her illness.

63. Joy was given morphine for pain numerous times a day.

64. On a daily basis Joy's daughter Marylyn and her son in law David would visit Joy sometimes for hours.

65. Joy would cry and beg to see a doctor.

66. Each time Joy and Marylyn requested a doctor to treat Joy they were denied and told it was up to the Guardian.

67. Marylyn would make phone calls to the Guardian Stephanie Krenn and she would not respond.

68. Marylyn e-mailed and contacted the Guardian numerous times asking that her mother be

seen by a doctor, but Joy received no treatment and became more ill with each day.

69. When Joy was placed in the Riverside nursing home, Joy was not given proper nutrition and hydration during her time there.

70. Joy immediately began losing weight and was constantly asking the staff to bring food and water to Joy and they would not respond for hours.

71. Many times Joy's daughter Marylyn would have to continuously ask them to provide Joy with food and water as it was not done.

72. Marylyn's daughter brought food and drinks into the nursing home for her mother.

73. As Joy grew sicker and weaker Marylyn had to feed her mother.

74. Many times Marylyn would bring food in and ask the nurses to give it to her mother for dinner or lunch when she wasn't there and it would be placed in the refrigerator in the cafeteria, but it was just left in the refrigerator and not be given to Joy.

75. The cafeteria food for the residents was not edible many times.

76. When Joy arrived at the Riverside Rest home she was placed in a locked up behavioral unit in a double room with only a curtain separating her from another person giving Joy no privacy at all.

77. When Joy arrived at the Riverside Rest Home her personal belongings that were brought for her by her daughter were removed from her room and supposedly labeled.

78. Many of the items were never received back and Joy's daughter asked why they were not returned and requested they be returned to her mother.

79. Joy had a quilted blanket that she Joy loved along with other blankets and new clothes and pajamas that were purchased for her were never given back to Joy upon Joy and Marylyn's request.

80.  Many times when Marylyn would bring Joy a card or cookies or a box of valentine candy, it was removed from Joy's room after Marylyn left and it was locked up in the nurses station and never returned to Joy despite the request from Joy and Marylyn for the return of the items.

81. When Joy was placed in the nursing home she also wanted a television and a phone hooked up, but that took approximately two weeks.

82. When Joy's telephone was hooked up the staff continued to place the telephone away from Joy making it difficult for her to call her family.

83. Shortly after Joy had her television hooked up, the staff took Joy's remote control to her television and did not return it upon request by Joy and Marylyn, but it was returned in a box of Joy's personal belongings after Joy died.

84. Joy was severely depressed in the nursing home.

85. Joy became very sick after being admitted into the nursing home.

86. Marylyn and Joy's son in law, David asked the PA Lynn Devlin and the Director, Raymond Bower, if they could take Joy out for a ride.

87. Joy's daughter Marylyn and son in law, David met with the staff to discuss Joy's medical Condition and treatment.

88. Joy's daughter Marylyn and son in law David were concerned Joy had a bladder infection and pneumonia and needed antibiotics.

89. Joy's daughter Marylyn and son in law David were told by the Riverside Rest Home PA, Lynn Devlin that Joy had a heart attack at Wentworth Douglas Hospital before being admitted to the Riverside Rest Home, that Joy was in kidney failure and was dying from failure to thrive and

that Joy would be dead before Easter and that Marylyn and her husband should not visit Joy as much and only spend a few minutes with her as they were taking up all of Joy's energy.

90. Marylyn and David told Lynn Devlin that Marylyn was the medical proxy for Joy when she was in Wentworth Douglas Hospital and Joy never had a heart attack and did not have kidney failure.

91. Lynn Devlin responded by saying I'm not surprised they never tell the family.

92. Later Joy's daughter Marylyn wrote a letter to the Guardian who was at the meeting Questioning the accuracy of What Lynn Devlin had stated about Joy having a heart attack and kidney failure.

93. After the meeting Joy's son in law called the Riverside Rest Home to see if he could use the transport van to take Joy for a ride Later, bit was told that they could not take Joy out for a ride.

94. When Joy was admitted to Riverside Rest Home Joy was placed in a room with a young woman who would constantly go over to a set of metal drawers and slam the drawers over and over and over. Joy would ask the girl to stop and she would go back minutes later and do it again. This was reported to the nurses who did nothing.

95. On one occasion Marylyn was on her way to work when she was called by a nurse from Riverside Rest Home and informed that her mother had thrown cheese puffs across the room and that she would have to write up Joy on report for doing it.

96. When Marylyn asked why Joy threw the cheese puffs she was told it was because the young girl was making Joy upset because she was noisy.

97. Joy was very sick and rather than removing the young girl from the room who was

slamming drawers, Joy was treated like a prisoner in lockup and was written up like she was in jail when she was in fact suffering from abuse and neglect by the Defendants and was in need of life saving medical care.

98. The Riverside Rest Home was abusing and neglecting Joy despite the fact Joy's daughter was asking desperately for someone to help her mother and continuously asked the nurses, guardian and PA for help.

99. In mid February of 2015 Marylyn went to see her mother in the rest home and her mother had been complaining that her abdomen hurt her by her left rib and that she couldn't touch it.

100.    Marylyn called the nurse to look at her mother's abdomen and the nurse told Joy that she probably had pain from laying on her side.

101.    On another occasion in February Joy told her daughter that a man had gone into her room at night and put something in her rectum and that it hurt and after liquid was running out of her.

102.    Marylyn went to the nurse and told the nurse what her mother told her and that her mother had pain in her rectum, but the nurse would provide no information to Marylyn telling her she wasn't the Guardian.

103.    Joy would complain that the staff and nurses would not get her out of bed to use the restroom and that when they rarely did they used a Hoyer to get her out and it hurt Joy and scared her and then they would leave her in a chair in a hallway for hours causing her severe pain, aching and swelling in her legs.

104.    Joy was forced to lay in a wet diaper day in and day out and when the nurses and staff would change her diaper they would wipe her with wet rags and rub her skin in her vaginal are very hard.

14

105.     On a number of occasions Joy was taken care of by a tall blonde woman who Joy complained was handling her very rough and bruises were on Joy's hands and body.

106.     Joy became withdrawn and depressed and asked to get physical therapy but was not allowed out of her bed or an alarm would go off.

107.     Joy was forced to go to the bathroom in a diaper because staff and nurses would not take her to the restroom.

108.     Joy felt dirty and degraded and felt humiliated.

109.     Joy was depressed from being placed in a nursing home and from the horrible abuse and lack of medical treatment she was receiving

110.     In February Joy continued to complain that her vaginal area was burning and aching and that she was in extreme pain.

111.     Joy's daughter Marylyn told the nurses and the Physician Assistant, Lynn Devlin that she thought her mother had a bladder infection and needed antibiotics and to see a doctor, but she was not examined or given medical treatment.

112.     Joy had a urinary tract infection that Lynn Devlin and the doctors refused to treat.

113.     Joy ended up with severe dehydration and diarrhea.

114.     Joy started having an increase in phlegm in her chest.

115.     Joy would cry saying her chest hurt and felt tight and she couldn't breath and that her legs were in severe pain and she would tell the nurses when they would come into her room that she wanted to see a doctor, but no doctor would examine or treat her as Joy and her daughter were told the doctors only see patients once a week and she would have to wait until the next week.

116.     Marylyn would call the nurses to look at her mother and told them her mother had

a fever and that she thought her mother was going to get pneumonia and was getting dehydrated without treatment.

117.    The nurses told Marylyn they couldn't discuss Joy's health with her as she was not the Guardian.

118.    Marylyn contacted the Office of Public Guardian and left messages for the Guardian that her mother was very sick and needed to get medical attention immediately for her mother, but her calls were not returned and just ignored.

119.    Marylyn e-mailed Stephanie Krenn and told her that Joy needed medical attention.

120.    Joy's health quickly declined when she was placed in the nursing home.

121.    With each day Joy lost more weight as food and hydration and medical care was Withheld from her.

122.    Joy's daughter and son in law watched in horror as their hands were tied by the State and they were denied the right to take their mother to the hospital for emergency help.

123.    Joy's daughter Marylyn and son in law, David continuously demanded throughout the months of January into February that Joy get medical help immediately and calls to the guardian, Stephanie Krenn and the Office of Public Guardian were made to no avail.

124.    On February 24, 2015, Joy's daughter Marylyn decided to seek assistance from the Court for an Emergency Order to have her mother taken to the hospital and it was Denied as the same Court that placed Joy under guardianship claimed it lacked jurisdiction to hear the Emergency Motion against the nursing home.

125.    After hearing the decision denying the Motion filed by Marylyn, Lynn Devlin

16

contacted Marylyn Flores via telephone and told Marylyn she was there in a meeting with the staff and the Guardian Mary Michaud and that they would not be transporting Joy to the Hospital and that it was not in her best interest.

126.    Joy's daughter Marylyn begged Lynn Devlon to help Joy and give her medical attention and Lynn Devlin refused stating again it was not in Joy's best interest.

127.    Joy's daughter Marylyn was very upset and told Lynn Devlon that she was murdering her mother and that she would bring a lawsuit against Lynn Devlon and the staff and Director of the Nursing Home along with the doctors and nurses if her mother died as they were killing her mother by refusing to provide her medical treatment.

128.    Lynn Devlon told Marylyn again that they would not transport her to the Emergency Room.

129.    That night on February 24, 2015, Marylyn went back to the Riverside Rest Home to be with her mother, but Joy was much worse and was now lying in bed with an oxygen mask over her face and Marylyn went into the hallway and started screaming and crying and was begging for somebody to help her mother.

130.    Marylyn was crying and very upset and went and sat next to her mother, and was Trying to comfort her mother when Joy asked Marylyn "Why are they doing this to me I didn't do anything to anybody?"

131.    Joy's daughter Marylyn told Joy that she was going back to the Court in the morning to try again to get her out of there and get her to a hospital and that she was going to try to get guardianship of her mother, but her mother responded with, "It's going to be too late Marylyn, I don't think I'm going to make it."

17

132.  Moments later a woman approached Joy with a syringe with liquid morphine in it and said she needed to take it.

133.  Marylyn told the woman that she would move out of the way and the woman told Marylyn "No don't do that she's a mean one, she's nasty and she likes to slap people."

134.  Marylyn told the woman that her mother wasn't slapping anyone and became very hurt and upset and felt as if she was in a horror movie.

135.  Joy was abused as she lay suffering and dying and abused in front of her daughter Marylyn that night on February 24, 2015.

136.  The following day Marylyn and Joy's son in law David went back to the nursing home to check on Joy and saw that she was much worse.

137. Marylyn and David went into the Hallway and walked up to a nurse and asked to have a doctor examine Joy, but the nurse told them she could not give them any information, because they weren't the guardian.  Marylyn told the nurse she was going for guardianship and the nurse told Marylyn that her mother was severely dehydrated and that they don't give IV's that their mother would not get hydrated unless she got to an Emergency room and get an IV with fluid.

138.  Immediately Joy's daughter Marylyn and her son in law David went to the Probate Court across the street and filed another Motion for an Emergency Order to have Joy transported to the Wentworth Douglas Hospital Emergency Room for medical treatment and rehydration.

139.  The Court then decided to hold a hearing, which was scheduled to take place a few hours later.  The Guardian and the nursing home were notified and upon notification of the hearing the Guardian then permitted Joy to be transported, but not treated once Joy arrived at the Emergency Room.

18

140. Marylyn was asked by the doctor on duty why Joy wasn't treated before arriving at the ER and Marylyn explained she had been trying to get her mother to the Emergency Room, but her mother was under guardianship and they wouldn't allow Joy to go to the ER.

141. The Doctor at the ER informed Marylyn and David that Joy was in Septic Shock, had pneumonia, pancreatitis and a severe urinary tract infection.

142. While in the ER the nurse inserted a urine catheter and the urine taken from the catheter was dark brown and filled with sediment.

143. The doctor informed Marylyn and David that Joy needed antibiotics and fluid immediately.

144. The doctor spoke with the Office of Public Guardian, Mary Michaud who called over to the ER and refused treatment for Joy.

145. Upon much begging from Marylyn and convincing by the doctor, the Guardian, Mary Michaud agreed to allow treatment with fluid if Marylyn agreed to take guardianship, which Marylyn was already seeking and agreed to.

146. Joy's blood pressure dropped dramatically as she was in Septic shock and Joy started having trouble breathing.

147. The doctor informed Marylyn and David that a breathing bipap machine was needed to keep Joy breathing, but that he had to call the Guardian to get permission.

148. The doctor contacted the Office of Public Guardian and the guardian would not allow the doctor to place Joy on a bipap machine.

149. Once again, Marylyn pleaded with the guardian and the doctor convinced the guardian to allow him to place Joy on a bi-pap machine.

150. The doctor informed Marylyn and David that Joy would need to be placed in ICU and that she had a high probability of dying.

151. The doctor had no beds in the ICU at Wentworth Douglas Hospital so Joy was Transported to the ICU at Maine Medical by ambulance.

152. When arriving at the Maine Medical ICU a nurse was standing over Joy and when Marylyn walked into the room the nurse looked at Marylyn with disrespect and asked who she was.

153. Marylyn replied she was Joy's daughter, and the nurse said to her, "What are you doing here you never had anything to do with her?" Marylyn was shocked and later found out that Susan Deyoe of the Office of Public Guardian had contacted Maine Medical before Marylyn arrived and lied to the doctor and told the doctor Joy was estranged from all her children.

154. The Office of Public Guardian, Susan Deyoe did this in an attempt to create a wedge between the medical providers of Joy Straw at Maine Medical and Joy's daughter Marylyn so that the Office of Public Guardian would receive great deference in their attempts to withhold medical treatment from Joy Straw.

155. Hours after Joy arrived at Maine Medical, Marylyn and Joy's son Larry Straw were told by the same nurse and a social worker that their mother needed to be removed from the breathing machine and that she would die without it.

156. Joy's daughter and son refused and said she needed more time to see if she would get better.

157. They were then told by the nurse and social worker that she would have no quality of life that she would be on a respirator for the rest of her life.

158. Joy's son and daughter argued that their mother needed more time.

20

159. Joy was in an out of consciousness and told Marylyn she couldn't breathe if the mask came off and that it was hurting her.

160. Joy fought for her life as she lay suffering and gasping for air because her lungs had collapsed and she was in incredible pain from Sepsis and pancreatitis.

161. Through her suffering Joy fought for life and even asked Marylyn and her son Chuckie for her stuffed doll that Marylyn had given her.

162. The last words to come from Joy was the morning of her death as she held her daughter Marylyn's hand.

163. Holding her daughter's hand and her granddaughter's hand, Joy looked at Marylyn as she was crying and squeezed her hand tightly and Joy said "I love you Marylyn. Your going to be OK."

164. Later that day on March 2, 2015, Joy Straw passed away surrounded by her daughter Marylyn and her husband David, Miriam who had just driven through snow for 3 days to try to get to her mother, Joy's son Larry, Joy's son Chuckie, her daughter Marylyn, her grandchildren and her daughters in law.

165. Unfortunately Joy did not get to see her son Michael or her daughter Joanne before she passed, as they could not get to her in time, but were able to tell her over the phone how much they loved her.

166. Joy was loved very much by her family and is missed so so much.

167. The deplorable and inhumane abuse and negligent actions and intentional actions and omissions by all the Defendants in concert, caused great and severe mental anguish and extreme and excruciation physical pain and suffering for Joy, was foreseeable and was the proximate cause of Joy's death on March 2, 2015.

21

168. The deplorable and inhumane actions by all the

169. The Plaintiff's Michael Straw, Miriam Lovin, Joanne Smith and Marylyn E. Flores have all lost their mother's companionship, affection and familiar relationship and suffered severe emotional distress, depression, fear, anxiety, panic, loss of sleep, anger and sadness, headaches, feel traumatized, increased high blood pressure, have nightmares and have had to deal with the traumatic ending of their mother's life was caused by the gross injustice and deplorable and horrendous outrageous reckless/negligent and intentional conduct/acts and/or omissions and failure to act by all the Defendants that foreseeably caused Joy Straw's torturous death on March 2, 2015 and foreseeably caused her children severe emotional and physical distress.

170. Joy's death was a tragedy caused by the Defendants who have employed policies that foreseeably end the lives of the elderly in their care.

171. The Defendants gained control of Joy Straw and decided it was her time to die.

172. A few days after Joy passed away, Joy's son Michael and her daughter and Marylyn and Joy's son in law, David went to the Riverside Rest home to pick up Joy's personal belongings.

173. When Joy's children and son in law entered the Riverside Rest Home to get Joy's belongings they were told to go to the office of the Director who then approached Joy's children and son in law screaming and yelling at Joy's family and got into Joy's son in law's face in a physically threatening manner and ordered them out of the Rest Home and to pick up Joy's personal belongings they had thrown in a box in the middle of the floor.

174. Joy was treated with utter disrespect in life by the Defendants who caused her death and even after her death.

175.   Approximately one week after Joy passed away, the Riverside Rest home obtained the medical records of Joy Straw from the Wentworth Douglas Hospital after they were informed they were going to be reported for nursing home abuse and negligence.

176.   Joy was treated by the Defendants like she didn't exist and was left in a bed to die.

177.   When Joy was placed under Guardianship, the Court's order was that the Office of Public Guardian ensure Joy's needs were met for nutrition, hydration and medical care and to act with respect to Joy Straw in a manner that safeguarded, to the greatest extent possible, Joy Straw's civil rights and liberties and to restrict her personal freedom only to the extent necessary.

178.   Joy's basic life sustaining needs and her civil rights and freedoms were denied.

179.   Joy Straw was to be protected and helped, not neglected and abused by the Office of Public Guardian, by Stephanie Krenn, by the Riverside Rest Home, it's staff, doctors or any of the remaining Defendants.

180.   Joy Straw was locked up in a facility in a behavior unit as if she were a criminal in prison.

181.   Joy Straw was neglected and abused and it was done so in accordance with the negligent and abusive policies and procedures of the Riverside Rest Home, the Riverside Rest Home Director, Raymond Bower, the Riverside Rest Home doctors and PA Lynn Devlon, Riverside nurses and Staff, the Office of Public Guardian and its staff, Stephanie Krenn, Mary Michaud, the Commissioner of the New Hampshire Department of Health and Human Services, Strafford County Commissioner Robert J. Watson, Physician Edwin Charlie, Physician Patrick Clary and Greg Andrecyk, Beacon Hospice and Amedisys Inc. in concert with all Defendants acting within the scope and purpose of their agency, service, employment, partnership, enterprise, conspiracy, and/or joint venture, while ratifying and approving the acts of each of the

23

other defendants and their intentional and reckless outrageous conduct that foreseeably and proximately caused Joy Straw's immense physical pain and suffering and torturous death on March 2, 2015 and the resulting mental anguish and pain and suffering Joy's children have endured.

182. The abuse, neglect, intentional acts and/or omissions and failure to act by all of the Defendants and their failure to carry out their required duties and provide the required nutrition, hydration and life sustaining necessities so that Joy Straw could live caused Joy Straw's death.

183. Joy Straw's death was foreseeable and preventable had all the Defendants, complied with the Court Order and upheld their duties to provide adequate care, treatment and rehabilitation to Joy Straw while ensuring her civil rights, liberties and freedoms were not violated.

## V. CAUSES OF ACTION

### COUNT I

### NEGLIGENCE-WRONGFUL DEATH
### NH RSA § 556:12

184. Plaintiffs hereby re-allege and incorporate by reference herein, each and every allegation contained above as if fully set forth in detail herein.

**A. Defendants Nicholas Toumpas, Commissioner, New Hampshire Department of Health and Human Services, Individually; Riverside Rest Home Director, Raymond Bower Individually; and Strafford County Commissioner Robert J. Watson, Individually**

185. PLAINTIFFS allege, that at all times relevant herein, Defendants Toumpas, Bower, Watson and each of them, acted negligently, carelessly, recklessly, and/or unlawfully by including but not limited to: failing to adopt and implement standard operating policies and procedures within the health and Human Services Department and Bureau of Elder Services,

24

within the County of Strafford and within the Riverside Rest Home that would ensure the safety, health and well-being of Joy Straw; and by failing to ensure that residents of the Riverside Rest Home such as Joy Straw received proper medical care, proper nutrition and proper hydration on a daily basis and were cared for by qualified health care providers.

186. The aforementioned acts and/or omissions by Defendants Toumpas, Bower and Watson, and each of them, were not the result of exercising due diligence in their duties and responsibilities to Joy Straw, who was admitted to a County nursing home for the purpose of protection from harm and the preservation of Joy Straw's health, welfare and safety.

187. The aforementioned acts and/or omissions by Toumpas, Bower and Watson to allow Beacon Hospice to provide end of life treatments to Riverside Rest Home residents and patients such as Joy Straw who was not terminally ill, when Beacon Hospice was already investigated and entered a $150 million dollar settlement with the Federal government for placing people on Hospice who were not qualified for hospice and in turn fraudulently billing Medicare, was a breach of their duties to ensure residents of the Riverside Rest Home such as Joy Straw were receiving quality care and qualified health care providers and that those health care providers such as Defendants Lynn Devlin, P.A., and physicians Edwin Charlie and Patrick Clary were meeting the standard of care when treating the elderly, those deemed incompetent and as Wards of the state and those who were disabled and in need of rehabilitation such as Joy Straw.

188. As a direct and legal result of the wrongful acts and/or omissions of Toumpas, Bower and Watson, Joy Straw was placed on Hospice without being qualified for Hospice as she was not terminally ill, she was not provided adequate medical care or proper nutrition and

hydration as ordered by the Court when Joy Straw was placed under guardianship of the Office of Public Guardian and her rights and liberties were not protected.

189.    As a direct and legal result of the wrongful acts and/or omissions of Toumpas, Bower and Watson, it was foreseeable that Joy Straw would die from dehydration, Sepsis, and Pneumonia and such direct and legal result of the wrongful acts and/or omissions of Toumpas, Bower and Watson did cause Joy Straw to go without proper hydration, nutrition and medical treatment and was the proximate cause of Joy Straw's death causing Joy Straw extreme emotional distress and pain and suffering upon her death.

190.    As a further direct and legal result of the wrongful acts and/or omissions of Toumpas, Bower and Watson, and each of them, Marylyn E. Flores and her husband David Flores, contemporaneously witnessed Marylyn's mother being deprived of food, water, nutrition, hydration and medical attention which caused her mother severe torturous pain and suffering and respiratory failure to the point where Joy Straw was choking, gasping for air and struggling to breath and in immense pain struggling for life in front of all Plaintiffs, foreseeably and proximately causing Plaintiffs extreme emotional distress, including nervousness, grief, anxiety, worry, mortification, shock, indignity, apprehension, terror, depression, sadness, nightmares, panic, high blood pressure, loss of sleep, humiliation, anger, headaches, stomach problems and weight gain.

191.  As a further direct and legal result of the wrongful acts and/or omissions of Toumpas, Bower and Watson, and each of them, Plaintiffs, Michael Straw, Miriam Lovin, Joanne Smith and Marylyn E. Flores continue to suffer loss of love, society, solace, companionship comfort, care, assistance, protection, affection, society, and moral support, all in an amount to be determined.

WHEREFORE, Plaintiffs pray for relief set forth below.

**B.    Defendants, Office of the Public Guardian, Stephanie Krenn, Mary Michaud, Ginger Simmons, Susan Devoe, Lynn K. Devlin, P.A. Riverside Rest Home, Physicians Edwin Charlie, Patrick Clary, Greg Andrecky, Beacon Hospice and Amedisys Inc.**

192.    PLAINTIFFS allege, that at all times relevant herein, Defendants Office of the Public Guardian, Stephanie Krenn, Mary Michaud, Ginger Simmons, Susan Devoe, Lynn K. Devlin, P.A. Riverside Rest Home, Physicians Edwin Charlie, Patrick Clary, Greg Andrecky, Beacon Hospice and Amidases, Inc, and each of them, acted negligently, carelessly, recklessly, and/or unlawfully by including but not limited to placing Joy Straw on Hospice when she had no terminal illness and was not going to die within six months and by failing to provide proper nutrition, hydration and medical care to Joy Straw while she was a resident and patient at the Riverside Rest Home.

193.    The aforementioned acts and/or omissions by the Defendants Office of the Public Guardian, Stephanie Krenn, Mary Michaud, Ginger Simmons, Susan Devoe, Lynn K. Devlin, P.A. Riverside Rest Home, Physicians Edwin Charlie, Patrick Clary, Greg Andrecky, Beacon Hospice and Amedisys, Inc, and each of them was a breach of their duty to comply with the Court Order in place that ordered the Office of Public Guardian and Stephanie Krenn to ensure that Joy Straw would be provided continuing care, supervision and rehabilitation and that she was provided adequate nutrition, hydration, and medical care to meet her daily needs and to act with respect to Joy Straw in a manner that safeguarded, to the greatest extent possible, Joy Straw's civil rights and liberties and to restrict her personal freedom only to the extent necessary. As all Defendants acted in concert with each other in depriving Joy Straw of these basic necessities and rights, they breached their duty to Joy Straw under the Court Order and breached their duty to the Plaintiffs.

194. As a direct and legal result of the wrongful acts and/or omissions and willful failure to provide adequate nutrition, hydration and medical care to Joy Straw by the Defendants Office of the Public Guardian, Stephanie Krenn, Mary Michaud, Ginger Simmons, Susan Devoe, Lynn K. Devlin, P.A. Riverside Rest Home, Physicians Edwin Charlie, Patrick Clary, Greg Andrecky, Beacon Hospice and Amedisys, Inc., it was foreseeable that such a breach of their duties would cause Joy Straw to become critically ill and die from dehydration, Sepsis, and Pneumonia and such direct and legal result of the wrongful acts and/or omissions of the Defendants Office of the Public Guardian, Stephanie Krenn, Mary Michaud, Ginger Simmons, Susan Devoe, Lynn K. Devlin, P.A. Riverside Rest Home, Physicians Edwin Charlie, Patrick Clary, Greg Andrecky, Beacon Hospice and Amedisys, Inc, was the foreseeable and proximate cause of Joy Straw's extreme emotional distress and pain and suffering and was the foreseeable and proximate cause of Joy Straw's death on March 2, 2015.

195. As a further direct and legal result of the wrongful acts and/or omissions of by the Defendants Office of the Public Guardian, Stephanie Krenn, Mary Michaud, Ginger Simmons, Susan Devoe, Lynn K. Devlin, P.A. Riverside Rest Home, Physicians Edwin Charlie, Patrick Clary, Greg Andrecky, Beacon Hospice and Amedisys, Inc , and each of them, Marylyn E. Flores and her husband David Flores, contemporaneously witnessed Marylyn's mother being deprived of food, water, nutrition, hydration and medical attention which caused her mother severe torturous pain and suffering in her abdomen, vaginal area, chest, legs, arms, rectum and caused severe respiratory failure to the point where Joy Straw was choking, gasping for air and struggling to breath and in immense pain struggling for life in front of all Plaintiffs, foreseeably and proximately causing Plaintiffs extreme emotional distress, including nervousness, grief, anxiety, worry, mortification, shock, indignity, apprehension, terror, depression, sadness,

28

nightmares, panic, high blood pressure, loss of sleep, humiliation, anger, headaches, stomach problems and weight gain.

196.   As a further direct and legal result of the wrongful acts and/or omissions of Toumpas, Bower and Watson, and each of them, Plaintiffs, Michael Straw, Miriam Lovin, Joanne Smith and Marylyn E. Flores continue to suffer loss of love, society, solace, companionship comfort, care, assistance, protection, affection, society, and moral support, all in an amount to be determined.

WHEREFORE, Plaintiffs pray for relief set forth below.

## COUNT II

### DEPRIVATION OF JOY STRAW'S FEDERAL CIVIL RIGHTS UNDER THE 4TH AND 14TH AMENDMENT DUE PROCESS AND EQUAL PROTECTION CLAUSES
(42 U.S.C. § 1983)
(Against all Defendants)

197.   Plaintiffs hereby re-allege and incorporate by reference herein, each and every allegation contained above as if fully set forth in detail herein.

198.   **PLAINTIFFS** allege that at all times herein mentioned, Joy Straw possessed a constitutional right to not be deprived of life or liberty without due process of law.

199.   All Defendants, through their discriminatory and abusive and negligent policies and procedures abridged and/or lowered the safety, health and welfare conferred on Joy Straw as a citizen of this country through federal, state, and/or local laws without due process and/or proper governmental purpose, thereby creating the danger and abuses and neglect to which Joy Straw fell victim and doing so with deliberate indifference to the known or obvious danger posed by all the Defendant's actions and willful failures to act when they negligently and willfully withheld proper nutrition, proper hydration and proper medical care from Joy Straw.

29

200.   Plaintiff, Joy Straw, deceased was denied her right to Due Process and Equal Protection of the law by all the Defendants' official discriminatory and abusive and neglectful policies as the Defendants, to include State and County actors, without due process and while denying Joy Straw equal protection of the law and with deliberate indifference to federal, state, and/or local law which safeguarded Joy Straw's Constitutional Rights, failed to provide adequate nutrition, hydration and medical care to Joy Straw;  kept Joy Straw in a bed attached to alarms against her will and locked in a behavioral unit against her will; grabbed Joy Straw by her arms and legs with excessive force causing her bruises on her arms, hands and legs and scrubbing her skin in her vaginal area till it was raw and sore to the touch while having her diaper changed and during her negligent care; and failed to provide Joy Straw with a safe and healthy environment to live her life in and is the moving force behind the Defendants .

201.  The Defendants did violate Joy Straw's rights to be free from excessive force in violation of her Constitutional rights, while in a locked behavioral unit at the Riverside Rest Home, while under the Guardianship of the Office of Public Guardian, proximately causing Joy Straw to contract Sepsis and the loss of her life.

202.  Joy Straw's civil rights under the 4th and 14th Amendment were violated by all the Defendants, to include state and county actors, when she was put under the control of all the Defendants who treated her as if she were a criminal, when they denied her liberty and her life, by the Defendants constant refusals to provide adequate nutrition, hydration and medical care when Joy Straw requested it and when her daughter Marylyn Flores requested it and when Joy Straw cried to be free from her bed and was denied immediate emergency medical life-saving treatment, because the Office of Public Guardian refused it against Joy Straw's wishes when she was rushed to the Wentworth Douglas Hospital.

203.    Defendants deprived Joy Straw of her right to life and the right to receive life sustaining medical treatment before she died in violation of her civil rights under the 14th Amendment Equal Protection and Due Process Clauses.

204.    As a direct and legal result of the wrongful acts and/or omissions and willful failure by all the Defendants to include state and county actors, to provide adequate nutrition, hydration and medical care to Joy Straw by the Defendants, it was foreseeable that such a breach of their duties would cause Joy Straw to become critically ill and die from dehydration, Sepsis, and Pneumonia. and such direct and legal result of the wrongful acts and/or omissions of the Defendants Office of the Public Guardian, Stephanie Krenn, Mary Michaud, Ginger Simmons, Susan Devoe, Lynn K. Devlin, P.A. Riverside Rest Home, Physicians Edwin Charlie, Patrick Clary, Greg Andrecky, Beacon Hospice and Amedisys, Inc., was foreseeable and the proximate cause of Joy Straw's extreme psychological and mental anguish, severe emotional distress, and excruciation pain and suffering and ultimate torturous death on March 2, 2015.

205.    As a further direct and legal result of the wrongful acts and/or omissions of by all the Defendants, more specifically the Office of the Public Guardian, Stephanie Krenn, Mary Michaud, Ginger Simmons, Susan Devoe, Lynn K. Devlin, P.A. Riverside Rest Home, Physicians Edwin Charlie, Patrick Clary, Greg Andrecky, Beacon Hospice and Amedisys, Inc , and each of them, Marylyn E. Flores and her husband David Flores, contemporaneously witnessed Marylyn's mother being neglected, physically hurt and abused, deprived of food, water, nutrition, hydration and medical attention which caused her mother severe torturous pain and suffering in her abdomen, vaginal area, chest, legs, arms, rectum and caused severe respiratory failure to the point where Joy Straw was choking, gasping for air and struggling to breath and in immense pain struggling for life in front of all Plaintiffs, foreseeably and

31

proximately causing Plaintiffs extreme mental anguish and emotional distress, including nervousness, grief, anxiety, worry, mortification, shock, indignity, apprehension, terror, depression, sadness, nightmares, panic, high blood pressure, loss of sleep, humiliation, anger, headaches, stomach problems and weight gain.

206. As a further direct and legal result of the wrongful acts and/or omissions of all the Defendants, and each of them, Plaintiffs, Michael Straw, Miriam Lovin, Joanne Smith and Marylyn E. Flores continue to suffer loss of love, society, solace, companionship comfort, care, assistance, protection, affection, society, and moral support, all in an amount to be determined.

WHEREFORE, Plaintiffs pray for relief set forth below.

## COUNT III

## DISCRIMINATION IN VIOLATION OF AMERICAN WITH DISABILITIES ACT AND THE REHABILITATION ACT; 29 U.S.C. §794(A) AND 28 C.F.R. § 41.51(A)-(D); 28 C.F.R. § 41.51(B)(3), 45 C.F.R. § 84, 4(b)(4)
### (Against all Defendants)

207. Plaintiffs hereby re-allege and incorporate by reference herein, each and every allegation contained above as if fully set forth in detail herein.

208. Joy Straw, the deceased was deemed incapacitated by the State of NH Probate Court. After being deemed incapacitated Joy was placed in a locked up area of Riverside Rest home as if she was a criminal and was not given proper nutrition and hydration as other nursing home residents receieved.

209. Joy was elderly and disabled as the Court determined her to be incapacitated and Joy was completely dependent on the staff and doctors at the Riverside Rest Home as well the Guardian Stephanie Krenn for her daily needs yet they treated Joy differently and with no respect or dignity, as all the Defendants by and through their policies and conduct and act/or omissions had Joy Straw, who was declared incapacitated by the Court, immediately put on Hospice when

32

she had no terminal illness and was not going to die within six months, and was treated with less than human dignity when all the Defendants failed to provide proper nutrition, hydration and medical care to Joy Straw while she was a resident and patient at the Riverside Rest Home, rather than treat her.

210. This neglect and abuse by all the Defendants was discriminatory treatment and the intentional failure to provide medical care to Joy Straw clearly was unequal to what others were afforded who were not locked up in a behavioral unit in the Riverside Rest Home.

211. The aforementioned acts and/or omissions by the Defendants Office of the Public Guardian, Stephanie Krenn, Mary Michaud, Ginger Simmons, Susan Devoe, Lynn K. Devlin, P.A. Riverside Rest Home, Physicians Edwin Charlie, Patrick Clary, Greg Andrecky, Beacon Hospice and Amedisys, Inc, and each of them was discriminatory and did not comply with the ADA or the intention of the Court Order in place that ordered the Office of Public Guardian and Stephanie Krenn to ensure that Joy Straw would be provided continuing care, supervision and rehabilitation and that she was provided adequate nutrition, hydration, and medical care to meet her daily needs and to act with respect to Joy Straw in a manner that safeguarded, to the greatest extent possible, Joy Straw's civil rights and liberties and to restrict her personal freedom only to the extent necessary.

212. All Defendants acted in concert with each other in treating Joy Straw differently because of her disability and because of her age by locking Joy up in a behavioral unit and depriving Joy Straw of these basic life sustaining necessities and rights, which was at odds with the Court Order and was discriminatory in nature against Joy who was declared incapacitated.

213. As a direct and legal result of the wrongful acts and/or omissions and willful acts of all Defendants, to include state and county actors, locking Joy up in a unit they considered a

"behavioral unit" based on Joy's age and incapacitation which rendered her disabled and all the Defendants' failure to provide adequate nutrition, hydration and medical care to Joy Straw by the Defendants Office of the Public Guardian, Stephanie Krenn, Mary Michaud, Ginger Simmons, Susan Devoe, Lynn K. Devlin, P.A. Riverside Rest Home, Physicians Edwin Charlie, Patrick Clary, Greg Andrecky, Beacon Hospice and Amedisys, Inc., it was foreseeable that such vicious, purposeful and willful discriminatory conduct would cause Joy Straw to become critically ill and die from dehydration, Sepsis, and Pneumonia and such direct and legal result of the wrongful acts and/or omissions of all the Defendants was the foreseeable and proximate cause of Joy Straw's extreme emotional distress, pain and suffering and slow and torturous agonizing death on March 2, 2015.

214.    As a further direct and legal result of the wrongful acts and/or omissions of by the Defendants Office of the Public Guardian, Stephanie Krenn, Mary Michaud, Ginger Simmons, Susan Devoe, Lynn K. Devlin, P.A. Riverside Rest Home, Physicians Edwin Charlie, Patrick Clary, Greg Andrecky, Beacon Hospice and Amedisys, Inc , and each of them, Marylyn E. Flores and her husband David Flores, contemporaneously witnessed Marylyn's mother being deprived of food, water, nutrition, hydration and medical attention which caused her mother severe torturous pain and suffering in her abdomen, vaginal area, chest, legs, arms, rectum and caused severe respiratory failure to the point where Joy Straw was choking, gasping for air and struggling to breath and in immense agonizing pain struggling for life in front of Plaintiffs daughter Marylyn Flores for more than a month, and in front of all of Joy's children at her death bed, foreseeably and proximately causing all Plaintiffs extreme emotional distress, including nervousness, grief, anxiety, worry, mortification, shock, indignity, apprehension, terror,

34

depression, sadness, nightmares, panic, high blood pressure, loss of sleep, humiliation, anger, headaches, stomach problems and weight gain.

WHEREFORE, Plaintiffs pray for relief set forth below.

## COUNT IV

## VIOLATION OF JOY STRAW'S CIVIL RIGHTS UNDER THE NH CONSTITUTION
### (Against all Defendants)

215.  Plaintiffs hereby re-allege and incorporate by reference herein, each and every allegation contained above as if fully set forth in detail herein.

216.  The policy, custom or practice adopted by all the Defendants, to include state and county actors, and reflected in their

Abhorrent and outrageous Conduct of locking Joy Straw up in a behavioral unit at age 86 because she was unable to take care of herself and by willfully failing to provide her medical care and by failing to provide Joy Straw with the basic necessities of nutrition and hydration, deprived Joy Straw of her natural, essential and inherent rights, particularly her right to life, her right to live and breathe and her right to seeking and obtaining happiness as guaranteed to her under the NH Constitution Bill of Rights, Article 2.

217.  As a direct and legal result of these wrongful acts and/or omissions and willful acts by all the Defendants in denying Joy Straw with the basic necessities of nutrition and hydration, deprived Joy Straw of her natural, essential and inherent rights, particularly her right to life, her right to live and breathe and her right to seeking and obtaining happiness as guaranteed to her under the NH Constitution Bill of Rights, Article 2 all the Plaintiffs, Joy Straw, deceased and all her Plaintiff children have suffered severe emotional distress, pain and suffering, to include extreme emotional distress, including nervousness, grief, anxiety, worry, mortification, shock, indignity, apprehension, terror, depression, sadness, nightmares, panic, high blood pressure, loss of sleep, humiliation, anger, headaches, stomach problems and weight gain, loss of Joy's love,

35

society, solace, companionship comfort, care, assistance, protection, affection, society, and moral support, all in an amount to be determined.

WHEREFORE, Plaintiffs pray for relief set forth below.

## COUNT V

### ASSAULT AND BATTERY ON JOY STRAW
(Against all Defendants)

218.   Plaintiffs hereby re-allege and incorporate by reference herein, each and every allegation contained above as if fully set forth in detail herein.

219.   Joy Straw was physically abused while in the negligent care of the Riverside Rest Home and under the guardianship and custody of the Office of Public Guardian, as all the Defendants as agents of their employers and by and through their policies and procedures and conduct did lock Joy Straw in a behavioral unit against her will and kept Joy Straw in a bed attached to alarms against her will that would go off if her feet or legs went over the side of the bed; and that all Defendants as agents of their employers and by and through their policies and procedures and conduct did grab Joy Straw by her arms and legs with excessive force causing her bruises on her arms, hands and legs and scrubbing her skin in her vaginal area till it was raw and sore to the touch while having her diaper changed.

220.   As a direct and legal result of the wrongful acts and/or omissions and willful failure by all the Defendants, to include State and County actors, by their conduct of keeping Joy Straw in a bed attached to alarms against her will and locked in a behavioral unit against her will; by their grabbing Joy Straw by her arms and legs with excessive force causing her bruises on her arms, hands and legs and scrubbing her skin in her vaginal area till it was raw and sore to the touch while having her diaper changed, Joy Straw suffered severe mental anguish, severe emotional distress, severe and extreme pain and suffering and death and that her children, have

36

suffered severe emotional distress, pain and suffering, to include extreme emotional distress, including nervousness, grief, anxiety, worry, mortification, shock, indignity, apprehension, terror, depression, sadness, nightmares, panic, high blood pressure, loss of sleep, humiliation, anger, headaches, stomach problems and weight gain, loss of Joy's love, society, solace, companionship comfort, care, assistance, protection, affection, society, and moral support, all in an amount to be determined.

WHEREFORE, Plaintiffs pray for relief set forth below.

## COUNT VI

### FALSE IMPRISOMENT
### (Against all Defendants)

221.   Plaintiffs hereby re-allege and incorporate by reference herein, each and every allegation contained above as if fully set forth in detail herein.

222.  Joy Straw was falsely imprisoned while she was in the negligent care of the Riverside Rest Home and under the guardianship and custody of the Office of Public Guardian, as all the Defendants as agents of their employers and by and through their policies and procedures and conduct did lock Joy Straw in a behavioral unit against her will and kept Joy Straw in a bed attached to alarms against her will that would go off if her feet or legs went over the side of the bed; and that all the Defendants refused to allow Joy Straw out of her bed upon her requests to get out of bed to use the rest room and to move about her room.

223.   As a direct and legal result of the wrongful acts and/or omissions and willful failure by all the Defendants, to include State and County actors, of keeping Joy Straw in a bed attached to alarms against her will and locked in a behavioral unit against her will; by their refusal to allow Joy Straw out of her bed upon her requests to get out of bed to use the rest room and to move about her room Joy Straw suffered severe mental anguish, severe emotional distress,

37

severe and extreme pain and suffering and death and that her children, have suffered severe emotional distress, pain and suffering, to include extreme emotional distress, including nervousness, grief, anxiety, worry, mortification, shock, indignity, apprehension, terror, depression, sadness, nightmares, panic, high blood pressure, loss of sleep, humiliation, anger, headaches, stomach problems and weight gain, loss of Joy's love, society, solace, companionship comfort, care, assistance, protection, affection, society, and moral support, all in an amount to be determined.

WHEREFORE, Plaintiffs pray for relief set forth below.

## COUNT VII

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(Against all Defendants)

224.    Plaintiffs hereby re-allege and incorporate by reference herein, each and every allegation contained above as if fully set forth in detail herein.

225. Joy Straw, deceased was subject to physical abuse and neglect, was not given proper nutrition and hydration or medical care, despite the fact all Defendants were on notice of Joy Straws neglectful and abusive living conditions by Joy's requests for medical treatment, by Joy's requests for food and water, by Marylyn's requests for Joy to get medical treatment, proper nutrition and hydration when she and her husband David Flores spoke with the employees, staff and nurses and the Director of the Riverside Rest Home and despite the fact that Joy's daughter Marylyn made numerous telephone calls, wrote letters and e-mails to the Office of Public Guardian and to the Defendant, Guardians and the Riverside Rest Home, Director, Raymond Bower on February 7th and February 24th and a meeting and phone calls to PA, Lynn Devlin requesting that her mother be seen by a doctor and be given proper nutrition, hydration and

medical attention and that her mother not be neglected and handled with excessive force, yet Joy Straw continued to be subjected to the severe abuse and neglect.

226. As a direct and legal result of the wrongful acts and/or omissions and willful failure by all the Defendants, to include State and County actors, of keeping Joy Straw in a bed attached to alarms against her will and locked in a behavioral unit against her will; by their refusal to allow Joy Straw out of her bed upon her requests to get out of bed to use the rest room and to move about her room; by their conduct of grabbing Joy's arms and legs with excessive force; by the willful failure by the medical staff of Riverside Rest Home to take Joy to the restroom forcing her to urinate in a diaper, and by their failure to provide her adequate nutrition and hydration and medical care upon notice of Joy's condition and upon their actual notice that Joy had lost more than 14 pounds in less than 2 months and was severely dehydrated and suffering from malnutrition, Joy Straw suffered severe mental anguish, severe emotional distress, severe and extreme pain and suffering and death and that her children, have suffered severe emotional distress, pain and suffering, to include extreme emotional distress, including nervousness, grief, anxiety, worry, mortification, shock, indignity, apprehension, terror, depression, sadness, nightmares, panic, high blood pressure, loss of sleep, humiliation, anger, headaches, stomach problems and weight gain, loss of Joy's love, society, solace, companionship comfort, care, assistance, protection, affection, society, and moral support, all in an amount to be determined.

WHEREFORE, Plaintiffs pray for relief set forth below.

## COUNT VIII

### FRAUD
### (Against all Defendants)

227. Plaintiffs hereby re-allege and incorporate by reference herein, each and every allegation contained above as if fully set forth in detail herein.

39

228.   All Defendants, by and through their actions/omissions and policies and procedures, placed Joy Straw on Hospice immediately after she was admitted to Riverside Rest Home without getting orders from two physicians who should have examined and diagnosed Joy Straw with a terminal illness that would have given her six months to live.

229.   Joy Straw had no such terminal illness and had no medical examinations by a Psychiatrist and no counseling or therapy by any psychiatrist as required under law before Joy was put on Hospice for purportedly having "failure to thrive."

230.   Joy Straw made it known to the Hospice visitor who came to see her after Joy was admitted to Riverside that she did not want to die, when Joy shockingly discovered Hospice was in her room, yet Beacon Hospice a subsidiary of Amedisys Inc. (who has already been fined more than $150 million dollars by the Federal government for fraudulent medical care claims throughout New Hampshire and the country) along with the Office of Public Guardian and the Riverside Rest Homes and their agents and employees and staff put Joy Straw on Hospice and began administering large doses of morphine and other drugs that slowed her respiration down and interfered with her ability to breath, causing phlegm to pool in her lungs that precipitated Joy's lungs to fill and cause pneumonia.  All the Defendants, more specifically, but not limited to, Beacon Hospice and Amedisys Inc., along with the Office of Public Guardian, the individual defendant guardians negligently, willfully and knowingly with the medical staff and employees and Director of the Riverside Rest home acted in concert with each other and withheld proper nutrition and hydration from Joy causing her to lose approximately 14 pounds in less than two months, refused to take her to the restroom forcing her to urinate in a diaper that resulted in Sepsis, and by refusing to provide her with antibiotics and medical treatment for a urinary tract

40

infection, pneumonia, pancreatitis and Sepsis, ultimately causing her health to declines and proximately causing Joy Straw's slow and torturous death.

231.  The Defendants, more specifically, but not limited to, Beacon Hospice and Amedisys Inc. knew Joy Straw was not qualified to be on Hospice caused her demise and knowingly submitting false claims to Medicare and other government agencies for hospice care for Joy Straw who was not terminally ill.

232.  As a direct and legal result of the wrongful acts and/or omissions and willful failure by all the Defendants, to include State and County actors, of putting Joy Straw on Hospice when she had no terminal illness; by the willful act of hastening Joy Straws death in concert with all the Defendants, when the medical staff of Riverside Rest Home refused to take Joy to the restroom forcing her to urinate in a diaper, and by their willful failure to provide her adequate nutrition and hydration and medical care upon notice of Joy's condition and upon their actual notice that Joy had lost more than 14 pounds in less than 2 months and was severely dehydrated and suffering from malnutrition, Joy Straw suffered severe mental anguish, severe emotional distress, severe and extreme and excruciating pain and suffering and death and that her children, have suffered severe emotional distress, pain and suffering, to include extreme emotional distress, including nervousness, grief, anxiety, worry, mortification, shock, indignity, apprehension, terror, depression, sadness, nightmares, panic, high blood pressure, loss of sleep, humiliation, anger, headaches, stomach problems and weight gain, loss of Joy's love, society, solace, companionship comfort, care, assistance, protection, affection, society, and moral support, all in an amount to be determined.

WHEREFORE, Plaintiffs pray for relief set forth below.

41

## COUNT IX

## VIOLATION OF JOY STRAW'S HIPAA RIGHTS UNDER 45 CFR 160, 162, AND 164 ) AND NH RSA 332-1:1-6
### (Against all Defendants)

233.   Plaintiffs hereby re-allege and incorporate by reference herein, each and every allegation contained above as if fully set forth in detail herein.

234.   All Defendants acting in concert to cover their neglect and abuse in order to avoid liability for the wrongful death and any claims against themselves and the other, obtained Joy Straw's medical records from the Wentworth Douglas Hospital more than a week after Joy Straw died, in violation of Federal and State HIPAA laws protecting Joy Straws medical records privacy, which prohibits unauthorized disclosure of protected health information by a health care provider or a business who is unlawfully seeking the records for anything other than treatment of the person who the medical records.

235.   Joy Straw had died approximately more than a week before the Defendants, Office of Public Guardian and the Riverside Rest Home illegally sought out Joy Straw's records.  Joy Straw as an aggrieved individual brings this cause of action and is entitled to special or general damages of not less than $1,000.00 to which all the Defendants, who acted in concert to cover their intentional acts and negligence by attempting to gain access to Joy Straw's medical records in order to alter them, are liable to the Plaintiffs.

WHEREFORE, Plaintiffs pray for relief set forth below.

## COUNT X

### NEGLIGENCE-SURVIVOR CAUSE OF ACTION
### (Against all Defendants)

236.   Plaintiffs hereby re-allege and incorporate by reference herein, each and every allegation contained above as if fully set forth in detail herein.

42

237.    On March 2, 2015 and prior to her death, the foregoing cause of action arose in Joy Straw's favor.  Since her death, the Plaintiff's children, Michael Straw, Miriam Lovin, Joanne Smith and Marylyn E. Flores, as heirs of Joy Straw and David Flores as, Administrator of the Estate of Joy Straw are authorized as successors in interest with respect to their interest in the property that was taken from Joy Straw, to pursue any and all legal claims for damages related thereto, and to recover damages for expenses incurred related to medical and/or emergency services related to this incident.

238.    At all times prior to Joy Straw's death, Defendants, and each of them, negligently, carelessly, recklessly, and/or unlawfully and intentionally acted/or failed to act, including but not limited to failing to perform mandatory duties and responsibilities so as to cause the death of Joy Straw.

239.    As a direct and legal result of the wrongful acts and/or omissions of all the Defendants, and each of them, on March 2, 2015, and the months while Joy was placed in the Riverside Rest Home prior to Joy's death, expenses were incurred for emergency and medical services.

240.    As a further direct and legal result of the wrongful acts and/or omissions of Defendants, and each of them, Joy also endured great and excruciating pain and suffering from all the Defendants failed policies and procedures and failure to provide proper nutrition, proper hydration and proper medical care to Joy before she died at the Maine Medical Center on March 2, 2015.

WHEREFORE, Plaintiffs pray for relief set forth below.

## VI. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray judgment against all Defendants as hereinafter set forth:

43

1.  For compensatory and general damages in an amount according to proof;

2.  For past and future medical, incidental, and service expenses according to proof;

3.  For pre- and post-judgment interest on all damages as allowed by the law;

4.  For costs of suit incurred herein;

5.  For attorney fees under existing law; and

6.  For such other and further relief as this Honorable Court deems equitable and just.

7. Punitive Damages,

Dated:  March 1, 2018

8. Jury Demand.

By: _____
    Pro Se  8001 Quiet Drive
    Pensacola, Florida 32526        (850) 619-1623

By: _____
    Pro Se  330 Village Square
    Centerville, Ohio 45458        (937) 825 8132

By: _____
    Pro Se  605 Country Club Dr. West
    ARAPAHOE, NC. 28510        (252) 249-1477

By: _____
    Pro Se  110 Portland Street
    South Berwick, ME. 03908        legalpeople2@Comcast.net
                                    617-981-9437

By: _____
    Administrator of Estate of Joy Straw
    110 Portland Street,        legalpeople2@Comcast.net
    South Berwick, ME. 03908        617-981-9453

## VII.  JURY DEMAND

All Plaintiffs demand trial by jury on all issues so triable.

44